**Mark SOKOLOW**

v.

**CITY OF LEAGUE CITY.**

**No. Civ.A. G–97–668.**

United States District Court,
S.D. Texas,
Galveston Division.

March 4, 1999.

Anthony P Griffin, Galveston, TX, Terry Lou Weir, Houston, TX, for Mark Sokolow, plaintiff.

William Scott Helfand, Magenheim Bateman Robinson, Houston, TX, for City of League City, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Sokolow brings this action against his former employer, the City of League City, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* He also alleges a violation of the Texas Open Meetings Act, TEX. GOV'T CODE ANN. § 551 *et seq.* Now before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, Defendant's Motion is **GRANTED.**

## I. BACKGROUND

Plaintiff Mark Sokolow served as the city attorney for the City of League City (the "City") from April 1991 until his allegedly unlawful termination on February 6, 1996. In his Response to Defendant's Motion for Summary Judgment, Plaintiff abandons two claims asserted in his Original Complaint: (1) that he was unlawfully discriminated against because he is Jewish, and (2) a state law quantum meruit claim for services he allegedly rendered after his termination. The first of his two remaining claims is that he was unlawfully terminated because of two instances of opposition to racist remarks allegedly uttered by City employees.[1] Plaintiff's second claim is that the city council took action to terminate him without providing the proper notice required by the Texas Open Meetings Act.

On June 29, 1993, Plaintiff issued a written reprimand to Irma Cortez, a secretary under his supervision. He reprimanded her for using the offensive expression "Jew

'em" when conversing with another city employee. Cortez complained about the reprimand to the mayor and city council. On July 4, 1993, Cortez filed a grievance against Plaintiff which was directed to the mayor and city council. Plaintiff's written reprimand was subsequently removed from Cortez's filed.

On February 22, 1994, Plaintiff wrote a memorandum to Joseph Murphy, Director of Administrative Services, stating that he had been informed by an employee, Mr. Garcia, that one of Murphy's staff, Denny Holt, had referred to a fellow employee as "jungle boy." He went on to state that because Garcia "is a witness in the Eva Spencer litigation, this type of evidence can be very damaging, if the Court determines that it is true." Plaintiff also wrote that he had personally heard a member of Murphy's staff make racist remarks. He suggested that Murphy counsel Holt and the rest of his staff regarding the inappropriateness of racially offensive language. He also suggested that Murphy document the counseling as evidence of the City's disapproval of such conduct. In September and October of 1994, the mayor pro tem and city administrator wrote memoranda complaining about the manner in which Plaintiff had handled the Holt incident. In particular, they were concerned that Plaintiff had exposed the City to liability by documenting rather than discussing the Holt incident with the appropriate parties, and also by failing to mark the memorandum to Murphy as "Confidential/Attorney–Client Privilege" which in their opinion would have made the memorandum undiscoverable for purposes of litigation. On November 3, 1994, apparently at least partly in response to these complaints, the city council considered but de-

---

1. In his Original Complaint, Plaintiff contended that his termination also resulted in part from his opposition to the city council's invocation which contained Christian sentiments. He mentions this allegation only briefly in a footnote in his Response, thus the Court assumes he has abandoned that particular allegation along with his race discrimination and quantum meruit claims. Regardless, the Court can find no authority supporting the notion that a religious invocation constitutes a discriminatory *employment* practice within the ambit of prohibited conduct under Title VII.

cided against dismissing Plaintiff as city attorney.

It was not until February 6, 1996, over a year later, that Plaintiff alleges that his handling of the 1993 and 1994 incidents again became an issue before the city council. As part of the agenda for the council meeting that day, a notice was posted which read:

EXECUTIVE (CLOSED) SESSION
11. TEXAS OPEN MEETINGS LAW, SECTION 551.074, GOVERNMENT CODE: DISCUSS THE DUTIES AND RESPONSIBILITIES OF THE CITY ATTORNEY PURSUANT TO HIS ANNUAL PERFORMANCE EVALUATION (THE CITY ATTORNEY MAY REQUEST A PUBLIC HEARING ON HIS EVALUATION, AS ALLOWED BY SECTION 551.074 OF THE GOVERNMENT CODE).
REGULAR (OPEN) SESSION
12. DISCUSS AND POSSIBLY TAKE ACTION ON THE DUTIES, RESPONSIBILITIES, AND EVALUATION OF THE CITY ATTORNEY.

In that meeting, the city council voted four to two in favor of terminating Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary

judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. RETALIATION CLAIM UNDER TITLE VII

In order to state a claim for retaliation, a plaintiff must allege (1) that he engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). An employee engages in a protected activity if he has either (1) opposed any practice made an unlawful employment practice by Title VII, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a); *Long*, 88 F.3d at 304. The opposition clause requires the employee to demonstrate that he had at least a "reasonable belief" the practices he opposed were unlawful. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir.1981).

The burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applicable to Title VII disparate treatment cases, is also applicable to Title VII unlawful retaliation cases. *See, e.g., Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases).[2] Under this framework, the Court employs a three-part test designed to determine a defendant's motivation in taking the challenged action. *See McDonnell*

---

**2.** *McDonnell Douglas* was refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94. First, the plaintiff must establish a *prima facie* case by proving the elements of his retaliation claim. If the plaintiff proves his *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Long,* 88 F.3d at 305. If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision. *See Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998); *Long,* 88 F.3d at 305, n. 4; *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). The mere fact that the plaintiff can establish the causal link of his *prima facie* case does not mean that he can prove the ultimate question of "but for" causation. *See McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116–17 (5th Cir.1983). The causal link element for the *prima facie* case is much less stringent. *See Long,* 88 F.3d at 305, n. 4. Even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct. *See id.; Jack v. Texaco Research Ctr.,* 743 F.2d 1129, 1131 (5th Cir.1984).

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

'[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, nondiscriminatory reason for his decision.' ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

In order to meet the first element of his *prima facie* case, Plaintiff alleges that he was discharged in retaliation for engaging in the following statutorily protected activity: (1) writing a memorandum reprimanding Irma Cortez, an executive secretary, for an isolated racially/ethnically/religiously offensive remark; and (2) writing a memorandum to Joseph Murphy regarding racist remarks allegedly made by Murphy's staff. At first glance, it is not apparent that these two actions fall within the ambit of Title VII's definition of statutorily protected activity. Isolated racist remarks by non-supervisory employees do not rise to the level of "unlawful employment practices" prohibited by Title VII. However, Plaintiff need only have a reasonable belief that the activity he opposed was an unlawful employment practice. *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.1981). Plaintiff expressed in his memorandum to Murphy his concern that an "environment of racism" could subject the City to liability. The Court, construing both the Cortez and Holt memoranda as expressing Plaintiff's opposition to the creation or continued existence of a hostile work environment, will assume for the purpose of disposition of this case that Plaintiff has met the first element of his *prima facie* case.

 Plaintiff's termination supplies the second element of his *prima facie* case, thus it is to the third element—a causal connection between the protected activity

and Plaintiff's termination—that the Court now turns. Plaintiff alleges several facts which he believes create a genuine issue of material fact as to causation. With respect to the Irma Cortez memorandum, Plaintiff refers to the City's removal of his written reprimand from Cortez's file as evidence of the City's unhappiness with his disciplining Cortez for making racially offensive remarks. With regard to Plaintiff's memorandum to Joseph Murphy, Plaintiff offers as evidence of a retaliatory motive the council's decision to consider and vote upon his termination immediately after the memorandum was brought to the city council's attention by angry correspondence from the city administrator and the mayor pro tem. It is readily apparent, however, from the mayor's and city administrator's correspondence regarding the Murphy memorandum that it was not Plaintiff's opposition to racially offensive comments that they disagreed with, rather it was Plaintiff's method of dealing with the situation. The gist of their complaints was that Plaintiff had exposed the City to liability in a pending lawsuit by writing a damaging memorandum and failing to properly designate it as attorney-client privileged, or alternatively, discussing the alleged racist remarks and appropriate procedures for addressing them rather than memorializing the incident.[3] Apparently, Plaintiff's memorandum did in fact become evidence in the pending lawsuit referenced in the memorandum. As the city attorney, Plaintiff had a duty of loyalty and confidentiality to his client, the City. City administrators perceived that he had breached that duty by unnecessarily exposing the City to legal liability.

The importance of the attorney's duty to his client, even where Title VII is involved, was recently underscored by the United States Court of Appeals for the Fifth Circuit in *Douglas v. DynMcDermott Petroleum Operations, Co.*, 144 F.3d 364 (5th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999). Plaintiff Douglas was employed by DynMcDermott as in-house counsel. DynMcDermott was under contract with DOE, and a condition of that contract was DynMcDermott's agreement to operate free from discriminatory practices. Douglas notified DOE of alleged discriminatory treatment against her, and the Court of Appeals held that she had breached her ethical duty of loyalty and confidentiality to her client and had thus forfeited Title VII protection for her particular conduct. In relevant part the Court stated, "that employee conduct, although fairly characterized as protest of or opposition to practices made unlawful by Title VII, may nevertheless be so detrimental to the position of responsibility held by the employee that the conduct is unprotected." *Douglas,* 144 F.3d at 374. Although the Court is not willing to go so far today as to grant Defendant summary judgment on the grounds that Plaintiff's conduct, like Douglas's, was unprotected, it is clear that a real or perceived violation of an ethical duty, even when that violation pertains to Title VII, can provide a legitimate basis for termination. Mere invocation of the words racism, discrimination, etc., does not give an attorney free license to jeopardize his client's interests.

Since the 1994 vote to terminate him failed, Plaintiff attempts to maintain the causal connection between the events of 1993 and 1994 and his ultimate termination in February of 1996 by pointing to comments in performance evaluations submitted by the mayor and council members at the February 1996 council meeting. Plain-

---

**3.** The mayor pro tem stated: "[e]verything in that memorandum is now discoverable. Also, I do not believe such a memorandum directed at another department ever should have been sent out regardless if it is in litigation or not. Someone should have sat down and discussed this." The city administrator stated: "The City Attorney ought to be seriously reprimanded for his duplicitous action related to the Eva Spencer case which was filed on December 29, 1993. Mr. Sokolow knowingly wrote a damaging memorandum that was not labeled 'Confidential Attorney/Client Privilege' which meant it was subject to subpoena by the other side and Mr. Sokolow knew it.... Mr. Sokolow's act is a severe ethical violation and you as a city council ought to be shocked into reality."

tiff alleges that the following comments show retaliatory animus based upon the earlier incidents:

Mayor Frankovich: "Doesn't work well with subordinates."

Council member McFadden: "Seems to have a hard time keeping employees working for him—does not treat fairly from complaints I have heard.... I believe Mark means well, but has to realize a city attorney should stay non-political.... A city Attorney needs to be a 'TEAM' player which I don't think Mark is, but could be."

Council member Kosty: "Mr. Sokolow has terminated several employees for questionable reasons: e.g. Irma Cortez.... Mr. Sokolow lacks good judgment regarding controversial issues, or political issues.... I can only conclude based on 3 years of information—which I believe should not be discarded because 'it is old,' but viewed as a continuous pattern of behavior—vacillating with each new administration."

Plaintiff's evidence is fatally deficient and utterly fails to raise a genuine issue of material fact as to Defendant's retaliatory motive for terminating him. If the city council intended to terminate Plaintiff on the basis of his conduct in 1993 and 1994, it is only logical to assume they would have taken that action at their meeting in November of 1994. Nothing in the mayor's or council members' written statements in February of 1996, quoted above, sustains a continuing causal link. For that matter, with the exception of one council member, nothing in the evaluations makes any reference, direct or indirect, to the incidents at issue in this case. Furthermore, none of the statements indicate that the city council in any way approved of racist behavior or disapproved of opposition to it. To the contrary, the only complaints contained in the statements quoted by Plaintiff pertain to Plaintiff's poor judgment and inability to interact appropriately with other employees. The inferential leap suggested by Plaintiff—that poor judgment and lack of interpersonal skills are code words for "too politically correct"—is

ludicrous, especially in light of the lengthy, thorough, and highly critical evaluations of several council members in all of the areas of job performance (a total of eleven) on which Plaintiff was rated. Plaintiff would ask the Court to ignore that evidence, or assume that council members were in cahoots to write lengthy, critical evaluations in order to provide a pretext for their retaliatory animus. Such is simply not plausible on the facts of this case. In sum, Plaintiff has failed to provide any credible evidence, other than his own subjective belief, that Defendant's motive for terminating him was retaliation. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim is hereby **GRANTED** and that claim is **DISMISSED WITH PREJUDICE.**

## IV. TEXAS OPEN MEETINGS ACT CLAIM

Plaintiff's second contention is that the city council violated the notice provision of the Texas Open Meetings Act, Tex. Gov't Code Ann. § 551 *et seq.* (the "Act"). The notice provision is intended to ensure that the public has the opportunity to be informed about governmental decisions involving public business. *See City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 765 (Tex.1991). A notice should be clear as to the proposed action to be accomplished at a particular meeting. *See Point Isabel Ind. Sch. Dist. v. Hinojosa,* 797 S.W.2d 176, 182 (Tex.App.—Corpus Christi 1990, writ denied). Plaintiff argues that the language used by the council, "[d]iscuss and possibly take action on the duties, responsibilities of the City Attorney," was not adequate as a matter of law. Plaintiff believes that only the language "to take action on the dismissal of the City Attorney", or language substantially similar, would satisfy the requirements of the Act. Contrary to Plaintiff's argument, however, it is not necessary for a posting to state all of the possible consequences which may necessarily flow from the consideration of the subject stated. *Texas Turnpike Auth.*

*v. City of Fort Worth,* 554 S.W.2d 675, 676 (Tex.1977). "The fact that possible consequences of that discussion might include a change in job description, a raise in salary, or even termination does not invalidate the action taken if the meeting notice was sufficient to alert the reader of the topic under consideration." *Rettberg v. Texas Dept. of Health,* 873 S.W.2d 408, 411 (Tex. App.—Austin 1994, no writ). The city council's notice indicated that the city attorney's job would be a topic of discussion and that action might be taken. As a matter of law, this is sufficient notice of the various consequence, including termination, which might naturally flow from such a discussion. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Texas Open Meetings Act claim is hereby **GRANTED.**

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** with respect to all of Plaintiff's claims. All claims raised in Plaintiff's Complaint, including those he has abandoned, are hereby **DISMISSED WITH PREJUDICE.** The parties are hereby **ORDERED** to file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. The parties are instructed to seek any further relief to which they may feel entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED**

### FINAL JUDGMENT

For the reasons set forth in the Court's Order entered this date, Defendant's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Defendant. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**