NUMBER 13-09-00589-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

CHANDRASHEKHAR B. THANEDAR,                                                Appellant, 

                                                                             

 

v.

 

DONNA INDEPENDENT SCHOOL DISTRICT,                          
Appellee.

                                                                                                                             

 

On appeal from the 398th
District
Court

of Hidalgo County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Garza 

 

            Appellant, Chandrashekhar
B. Thanedar, challenges the trial court’s judgment in favor of appellee, Donna
Independent School District (“DISD”), in a suit Thanedar filed under the Texas
Whistleblower Act.  See Tex. Gov’t Code
Ann. § 554.001–.010 (West 2004).  In his suit, Thanedar alleged, among
other things, that DISD, his employer, suspended him with pay and later
terminated his employment because he had previously reported to law enforcement
that certain DISD officials had engaged in criminal behavior, including
bribery, extortion, and theft.

Thanedar, appearing
pro se both at trial and before this Court, sets forth fifteen issues on
appeal.  We construe them as seven and rearrange them as follows:  (1) the
trial court failed to comply with Texas Rules of Civil Procedure 296 and 297;
(2) Thanedar’s suspension and dismissal are void because DISD failed to comply
with the Texas Open Meetings Act (“TOMA”), see id. §§ 551.001–.146 (West
Supp. 2010); (3) Thanedar “substantially prevailed” in the case, thereby
entitling him to fees under TOMA, see id. § 551.142; (4) the trial court
erred by denying Thanedar’s motion to strike DISD’s affirmative defense of
after-acquired evidence; (5) the trial court erred by failing to rule on
certain motions before trial; (6) the jury charge was defective; and (7) there
was no evidence supporting the verdict.  We affirm.

I. 
Background

            In March 2005, Thanedar
applied for the position of DISD’s chief financial officer (“CFO”).  As part of
the hiring process, Thanedar submitted a certificate indicating that, in 1983,
he had passed the examination required to become a certified public accountant
(“CPA”) in Louisiana.  According to DISD, the CFO was required to be a
certified CPA, and Thanedar represented to the board’s search committee that he
was so certified.  In fact, Thanedar was not, and never had been, certified or
licensed as a CPA in Texas.  See Tex.
Occ. Code Ann. §§ 901.251–.260 (West Supp. 2010) (listing requirements
to obtain CPA certification in Texas).  Unaware of this, the DISD board of
trustees voted on April 11, 2005 to appoint Thanedar as the district’s CFO, and
Thanedar began his work at that position on April 18, 2005.

            In March and April of
2006, Thanedar began making reports to various local, state, and federal law
enforcement agencies alleging that DISD officials had engaged in illegal
activity, including “bribery, extortion, theft, E-Rate violations, overpayment
of bills, [and] payroll overpayments” in connection with the construction of
Stainke Elementary School in Donna, Texas.  In defiance of the superintendent,
Thanedar refused to sign a check paying the general contractor in charge of the
construction, noting that investigations were still ongoing as to his
allegations of wrongdoing.

            The DISD board of trustees
called a special board meeting for April 18, 2006.  At this meeting, according
to Thanedar, the board purportedly decided to suspend Thanedar with pay. 
Thanedar later received two letters:  one dated April 19, 2006, stating that he
had been suspended with pay; and one dated April 24, 2006, stating that DISD
would not be renewing his employment contract.  Believing that he was
terminated because of the reports he made to law enforcement, Thanedar filed
grievances pursuant to DISD policy, which were rejected.

Thanedar then sued DISD, asserting: 
(1) unlawful retaliation under the Whistleblower Act; (2) violations of TOMA;
(3) violations of the due course of law provision of the Texas Constitution, see
Tex. Const. art. I, § 19; and (4)
breach of contract.  He sought damages, as well as an injunction reinstating
him as CFO, and a declaration that his suspension and dismissal were invalid
under TOMA.

The trial court granted a directed
verdict in favor of DISD on all of Thanedar’s causes of action other than his
Whistleblower Act claim.  The jury found against Thanedar on that claim, and
the trial court rendered a take-nothing judgment in accordance with the
verdict.  This appeal followed.

II. 
Discussion

A.        Findings of
Fact and Conclusions of Law

            By his
first issue, Thanedar asserts that the trial court erred by declining to issue
findings of fact and conclusions of law after Thanedar made requests pursuant
to Texas Rules of Civil Procedure 296 and 297.  See Tex. R. Civ. P. 296, 297.  Following a
bench trial, a trial court’s duty to file findings of fact and conclusions of
law is mandatory pursuant to a rule 296 request and a rule 297 reminder for the
same.  Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996); Cherne Indus.,
Inc. v. Magallanes, 763 S.W.2d 768, 771 (Tex. 1989).  However, the trial
court has no such duty after granting a defendant’s motion for directed verdict
or after presiding over a jury trial.  See IKB Indus. (Nig.), Ltd. v.
Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997) (“The purpose of Rule 296
is to give a party a right to findings of fact and conclusions of law finally
adjudicated after a conventional trial on the merits before the court.  In
other cases findings and conclusions are proper, but a party is not entitled to
them.”); see also Ditto v. Ditto Inv. Co., 158 Tex. 104, 106, 309 S.W.2d
219, 220 (1958) (noting that the trial court’s filing of findings of fact and
conclusions of law following a jury trial “was neither necessary nor proper”). 
The trial court was under no duty to issue findings of fact and conclusions of
law in this case.

Thanedar further
contends by this issue that the judgment on appeal lacks finality because it
“failed to specifically state that [it] actually disposed of all claims of
parties, [and] failed to rule on dispositive issues . . . .”  We disagree.  The
judgment expressly ordered that Thanedar take nothing by way of his suit
against DISD and stated specifically that “all relief not expressly granted
herein is denied.”  Additionally,

[w]hen a judgment, not intrinsically
interlocutory in character, is rendered and entered in a case regularly set for
a conventional trial on the merits, no order for a separate trial of issues having
been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be
presumed for appeal purposes that the Court intended to, and did, dispose of
all parties legally before it and of all issues made by the pleadings between
such parties.

 

N. E. Indep. School
Dist. v. Aldridge,
400 S.W.2d 893, 897–98 (Tex. 1966); see Vaughn v. Drennon, 324 S.W.3d
560, 561 (Tex. 2010) (per curiam).

The trial court’s
judgment in this case was final and appealable.  We overrule Thanedar’s first
issue.

B.        Texas Open
Meeting Act Claims

            By his
second and third issues, Thanedar claims that DISD “never legally terminated or
suspended [his] employment”; that any adverse employment action taken against
him “is void because DISD did not name [him] or his position as a subject in
his notice of meeting”; and that DISD’s board of trustees “took no
ascertainable action” against him at any official board meeting.  We construe
these issues as challenging the trial court’s directed verdict on Thanedar’s
claims brought pursuant to TOMA.  A directed verdict is proper when (1)
a defect in the opponent’s pleadings makes them insufficient to support a
judgment, (2) the evidence conclusively proves a fact that establishes a party’s
right to judgment as a matter of law, or (3) the evidence offered on a cause of
action is insufficient to raise an issue of fact.  Koepke v. Martinez,
84 S.W.3d 393, 395 (Tex. App.—Corpus Christi 2002, pet. denied).

            In his
live pleading, Thanedar claimed that DISD “woefully failed to specifically
describe or identify in its notice of April 18, 2006, that one of the subjects
to be addressed by the DISD during the meeting was the suspension of Thanedar’s
employment with the DISD and/or the non-renewal of Thanedar’s employment
‘contract’ with DISD . . . .”  It is undisputed that the notice of the April
18, 2006 meeting included “Discussion/Possible Action on Personnel” as a
meeting topic but did not list Thanedar’s name or his position specifically.

            Section
551.002 of TOMA provides that “[e]very regular, special, or called meeting of a
governmental body shall be open to the public, except as provided by this
chapter.”  Tex. Gov’t Code Ann. §
551.002; see id. § 551.001(3)(E) (defining “governmental body” to
include a “school district board of trustees”).  Section 551.041 of the statute
states that “[a] governmental body shall give written notice of the date, hour,
place, and subject of each meeting held by the governmental body.”  Id.
§ 551.041.  Generally, as long as a meeting notice alerts the reader to the
topic for consideration, it is not necessary for the notice to state all of the
consequences which may flow from consideration of the topic.  Cox Enters.,
Inc. v. Board of Trustees, 706 S.W.2d 956, 958 (Tex. 1986); see Sokolow
v. City of League City, 37 F.Supp.2d 940, 946–47 (S.D. Tex. 1999).  However,
when the topic is of special interest to the public, the description must be
more detailed, and must provide “reasonable specificity of the subject matter
to be considered.”  Cox, 706 S.W.2d at 959.  “[A]s public interest in a
matter increases, a correspondingly more detailed description of the subject
under consideration must be given.”  Rettberg v. Tex. Dep’t of Health,
873 S.W.2d 408, 411 (Tex. App.—Austin 2004, no pet.) (citing Cox, 706
S.W.2d at 959; Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W.2d
176, 180 (Tex. App.—Corpus Christi 1990, writ denied)).

In Cox, the Texas
Supreme Court found that the word “personnel” was insufficiently specific to
notify the public of the selection of a new school district superintendent.  706
S.W.2d at 959.  The Court, noting that the “[s]election of a new school
superintendent is not in the same category as ordinary personnel matters,”
found that more specificity was needed in order to provide “full and adequate”
notice to the public under TOMA.  Id.; see Salazar v. Gallardo,
57 S.W.3d 629, 633–34 (Tex. App.—Corpus Christi 2001, no pet.); Point Isabel,
797 S.W.2d at 179; see also Rogers v. City of McAllen, No.
13-07-00278-CV, 2008 Tex. App. LEXIS 6381, at *10 (Tex. App.—Corpus Christi
Aug. 21, 2008, no pet.) (mem. op.).  Similarly, in Point Isabel, we
found that a public notice listing “employment of personnel” as a meeting topic
was insufficient to advise the public that the hiring of school principals
might be considered at the meeting.  797 S.W.2d at 182.  However, we also
concluded that this language was sufficient to advise the public that
the positions of “librarian, part-time counselor, band director, and elementary
school teacher” would be discussed at the meeting, reasoning that “[t]he record
does not disclose public interest in these positions.”  Id. at 183.

            Thanedar
asserts that his position of CFO was of such “special interest to the public”
that DISD was required by TOMA to list the position and Thanedar’s name as
subjects in the public notice.  We disagree.  While school principals and
superintendents have substantial interaction with the public and shoulder broad
policymaking responsibility, CFOs are concerned predominantly with internal
school district matters.  The duties of a CFO therefore do not involve “broad
contact” with the public such that the position requires greater notice
specificity than that generally required under TOMA.  See Mayes v. City of
De Leon, 922 S.W.2d 200, 203 (Tex. App.—Eastland, 1996, writ denied)
(holding that the job of a police chief was of special interest to the public
because of “the broad contact with the public that those duties involve”); see
also Rettberg, 873 S.W.2d at 412 (holding that the position of executive
secretary of the State Board of Examiners of Professional Counselors was not of
special interest to the public).  We note further that the only evidence
Thanedar produced on this issue was the testimony of certain DISD trustees and
employees; there was no evidence adduced specifically as to the importance of
Thanedar’s position to the public at large.  Accordingly, we cannot conclude
that the position of CFO was of such special interest to the public that a more
specific notice was required.

The trial court’s
directed verdict as to Thanedar’s TOMA claims was proper because Thanedar
failed to produce evidence sufficient to raise an issue of fact on those
claims.[1] 
See Koepke, 84 S.W.3d at 395.  Further, because Thanedar did not prevail
on those claims, he was not entitled to fees or costs under TOMA.  See Tex. Gov’t Code Ann. § 551.142
(providing that the trial court “may assess costs of litigation and reasonable
attorney fees incurred by a plaintiff or defendant who substantially prevails
in an action” for injunctive relief under TOMA).  We overrule Thanedar’s second
and third issues.[2]

C.        Motion to
Strike Affirmative Defense of After-Acquired Evidence

            Thanedar
argues by his fourth issue that “DISD was required to but failed to timely and
specifically and sufficiently raise, and plead the affirmative defense of
alleged after acquired evidence.”  He asserts that the trial court therefore
erred in denying his motion to strike that affirmative defense, raised by DISD
in its sixth amended answer to Thanedar’s suit.[3]

The after-acquired
evidence doctrine acts as a limitation on an employee’s recovery for a
retaliatory discharge claim.  Trico Techs. Corp. v. Montiel, 949 S.W.2d
308, 312 (Tex. 1997).  Under the doctrine, “[i]f an employer establishes that
an employee’s misconduct was so severe that the employee would have been
legitimately discharged solely on that basis, after-acquired evidence of the
employee’s misconduct bars reinstatement and recovery of actual damages for the
period after the employer discovered the grounds for termination.”  Id.
(finding that doctrine applies to retaliation actions brought under the Texas
Workers’ Compensation Act).[4]

Here, DISD asserted
that complaints regarding Thanedar’s job performance were sufficient, alone, to
justify his dismissal.  However, DISD’s live pleading merely stated that “Defendant
would specifically invoke the after acquired evidence doctrine” and did not
specify what evidence DISD would rely on as a basis for this defense.  Thanedar
argues on appeal that DISD therefore failed to adequately plead the defense. 
He claims that a defendant “must do more than just state that it has some vague
after acquired evidence defense, but must show and generate the defense
specifically.”

We need not determine
whether the defense was adequately pleaded because Thanedar cannot show he was
harmed by the alleged error.  See Tex.
R. App. P. 44.1(a) (stating that error in a civil case is reversible
only if it (1) probably caused the rendition of an improper judgment, or (2)
probably prevented appellant from properly presenting the case on appeal).  The
jury was instructed not to address DISD’s after-acquired evidence defense if it
found no liability on Thanedar’s Whistleblower Act claim.  The jury found no
liability and, in accordance with the instructions, did not consider any
affirmative defense.  Thanedar therefore has not shown that the trial court’s
error, if any, in denying his motion to strike was reversible.  See id. 
His fourth issue is overruled.

 

 

D.        Failure to
Rule on Motions Before Trial

            By his
fifth issue, Thanedar argues that the trial court erred by “repeatedly failing
to rule on more than 19 motions (12 of Thanedar and 7 from DISD) that had
accumulated in 3 1/2 years before the beginning of jury trial, causing a great
deal of harm to Thanedar . . . .”  Thanedar does not, in his brief, set forth
the standard of review applicable to a trial court’s alleged failure to rule on
motions, nor does he set forth the standard of review applicable to the motions
themselves.  He does not explain what he requested in the motions, whether he
called them to the trial court’s attention, whether the trial court carried the
motions with the trial, or how he was harmed by the trial court’s failure to
rule before trial.[5] 
Under these circumstances, nothing has been presented for our review.  See
Tex. R. App. P. 33.1(a); Tex. R. App. P. 38.1(i) (requiring a
“clear and concise argument for the contentions made, with appropriate
citations to authority and to the record”).  We overrule Thanedar’s fifth
issue.

E.        Jury Charge

            Thanedar
complains by his sixth issue that the trial court’s jury charge was defective. 
Specifically, he argues that:  (1) question number one is “impermissibly vague
and misleading”; (2) question number two “unjustly assumes misconduct on
Thanedar’s part and wrongfully fails to specify any misconduct and fails to
provide instructions”; and (3) the instructions given were defective and
inadequate.

The trial court must
submit instructions and definitions to the jury as are necessary to enable the
jury to render a verdict.  Tex. R. Civ.
P. 277.  The goal of the charge is to submit to the jury the issues for
decision logically, simply, clearly, fairly, correctly, and completely.  Hyundai
Motor Co. v. Rodriguez, 995 S.W.2d 661, 664 (Tex. 1999).  Failure to submit
a question is not deemed grounds for reversing the judgment unless its
submission, in substantially correct wording, has been requested in writing by
the party complaining of the judgment.  Tex.
R. Civ. P. 278.  We review charge complaints for abuse of discretion.  Tex.
Dep’t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990).  A clear
failure to analyze or apply the law correctly will constitute such an abuse.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).  We will reverse only where the
error in the jury charge is shown to have probably caused the rendition of an
improper judgment or probably prevented the appellant from properly presenting
the case on appeal.  See Tex. R. App.
P. 44.1(a).[6]

            Jury
question number one asked:  “Was [Thanedar]’s report of violations of law made
in good faith and a cause of [DISD]’s terminating or suspending [Thanedar] . .
. ?”

In his proposed jury
charge, Thanedar submitted the following corresponding question:  “Do you find
by a preponderance of the evidence that Mr. Thanedar reported a violation of
law in good faith to an appropriate law enforcement agency which caused solely
or in part the defendant to take an adverse personnel action against Mr.
Thanedar?”  Thanedar argues that the trial court’s question number one was (1)
“impermissibly vague” because it did not specify which “report” it was
referring to,[7]
and (2) erroneous because it did not ask whether Thanedar made a report to an
“appropriate law enforcement agency.”  We disagree.  Thanedar does not point to
any authority, and we find none, requiring that the jury question specify which
report allegedly caused the adverse personnel action.  Moreover, the evidence
at trial was uncontroverted that Thanedar made reports to at least one “appropriate
law enforcement agency” and the jury charge defined that term properly as set
forth in the statute.  See Tex.
Gov’t Code Ann. § 554.002(b) (stating that an “appropriate law
enforcement authority” is “a part of a state or local governmental entity or of
the federal government that the employee in good faith believes is authorized
to:  (1) regulate under or enforce the law alleged to be violated in the
report; or (2) investigate or prosecute a violation of criminal law”).  The
trial court did not err by submitting question number one.

            Question
number two asked:  “Did [Thanedar] engage in misconduct for which [DISD] would
have legitimately discharged him solely on that basis?”  The jury was
instructed to answer this question only if it answered “Yes” to question number
one.  Thanedar argues that this question improperly assumes that DISD’s defense
under section 554.004(b) of the Whistleblower Act is based on evidence of
“misconduct,” whereas the statute allows the defense to be based on any “information,
observation, or evidence that is not related to the fact that the employee made
a report protected under this chapter.”  Tex.
Gov’t Code Ann. § 554.004(b).  Even assuming that submission of this
question was incorrect, we find no reversible error.  As noted, the jury, as
instructed, did not consider question number two because it did not find
liability under question number one.  Therefore, Thanedar cannot show he was
harmed by any error.  See Tex. R.
App. P. 44.1(a).

            Finally,
Thanedar argues that the instructions given to the jury were defective. 
Specifically, the charge instructed the jury that Thanedar “has the burden to
prove each element of his claim by a preponderance of the evidence.”  A
separate section of the charge, entitled “Plaintiff’s Burden of Proof Under the
Texas Whistleblower Act,” stated as follows:

You are instructed that under the
“Texas Whistleblower Act” the Plaintiff, [Thanedar], has the burden to prove by
a preponderance of the evidence that [DISD] suspended him after he, in good
faith, reported a violation of law to an appropriate law enforcement authority
and that the suspension would not have occurred when it did, absent Plaintiff’s
report.

 

The actual text of
the Whistleblower Act, on the other hand, states as follows:

A public employee who sues under this
chapter has the burden of proof, except that if the suspension or
termination of, or adverse personnel action against, a public employee occurs
not later than the 90th day after the date on which the employee reports a
violation of law, the suspension, termination, or adverse personnel action is
presumed, subject to rebuttal, to be because the employee made the report.

 

Tex.
Gov’t Code Ann.
§ 554.004(a) (emphasis added).

The instructions
given as part of the jury charge were erroneous in two ways.  First, the charge
neglects to advise the jury of the rebuttable presumption provided in section
554.004(a), which is indisputably applicable in the instant case.  See id. 
Second, the charge is incorrect when it states that Thanedar bore the burden to
prove “that the suspension would not have occurred when it did, absent
Plaintiff’s report.”  In fact, the existence of an alternate justification for
a plaintiff’s suspension or dismissal is an affirmative defense for which the
defendant bears the burden of proof, not an element of the tort for which the
plaintiff would bear the burden.  See id. § 554.004(b) (“It is an
affirmative defense to a suit under this chapter that the employing state or
local governmental entity would have taken the action against the employee that
forms the basis of the suit based solely on information, observation, or
evidence that is not related to the fact that the employee made a report
protected under this chapter of a violation of law.”).

            The trial
court abused its discretion in submitting this instruction in the jury charge. 
Moreover, Thanedar preserved the error by submitting substantially correct
versions of the questions and instructions in his proposed jury charge.  See
Tex. R. Civ. P. 278.  However, we
find that the errors we have identified are not grounds for reversal because
the errors did not cause Thanedar to suffer harm.  As detailed further infra,
DISD produced evidence indicating that the board of trustees had significant
legitimate concerns regarding Thanedar’s job performance.  Accordingly, even if
the jury had been properly instructed as to the statutory presumption, the jury
could have reasonably concluded that the presumption had been effectively
rebutted, thereby shifting the burden again to Thanedar to show causation.  We
cannot say, therefore, that the charge errors probably caused the rendition of
an improper verdict or prevented Thanedar from preventing his case on appeal.  See
Tex. R. App. P. 44.1.  Thanedar’s
sixth issue is overruled.

F.         Evidence
Supporting Rejection of Whistleblower Claim

            By his
seventh issue, Thanedar claims that no evidence supported the jury’s finding
that DISD did not unlawfully retaliate against him under the Whistleblower
Act.  We construe this argument as a challenge to the legal sufficiency of the
evidence supporting the jury’s verdict.

In general, evidence will
be considered legally sufficient if it would enable reasonable and fair-minded
people to reach the verdict under review.  City of Keller v. Wilson, 168
S.W.3d 802, 823 (Tex. 2005).  However, when a party attacks the legal
sufficiency of an adverse finding on an issue upon which it had the burden of
proof, that party must demonstrate on appeal that the evidence establishes, as
a matter of law, all vital facts in support of the issue.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001).  We review the evidence in the
light most favorable to the verdict, crediting evidence that supports the
verdict if reasonable jurors could and disregarding all contrary evidence that
a reasonable jury could have disbelieved.  City of Keller, 168 S.W.3d at
822.

The Whistleblower Act
states that

[a] state or local governmental entity
may not suspend or terminate the employment of, or take other adverse personnel
action against, a public employee who in good faith reports a violation of law
by the employing governmental entity or another public employee to an
appropriate law enforcement authority.

 

Tex.
Gov’t Code Ann.
§ 554.002(a).  A public employee whose employment is suspended or terminated in
violation of the statute may sue to obtain (1) reinstatement to the employee’s former
position or an equivalent position, (2) compensation for wages lost during the
period of suspension or termination, and (3) reinstatement of fringe benefits
and seniority rights.  Id. § 554.003(b).

The following
elements are required to establish a claim under the Whistleblower Act:  (1) the
plaintiff is a public employee; (2) the report was made in good faith; (3) the report
involved a violation of law; (4) the report was made to an appropriate law
enforcement authority; and (5) the plaintiff suffered retaliation as a result
of making the report.  Bexar County v. Lopez, 94 S.W.3d 711, 714 (Tex.
App.—San Antonio 2002, no pet.) (citing Tex.
Gov’t Code Ann. § 554.002(a)).  A “good faith” report means that the
plaintiff must have believed he was reporting conduct that constituted a
violation of law and his belief must have been reasonable based on his training
and experience.  City of Elsa v. Gonzalez, 325 S.W.3d 622, 626 (Tex.
2010); see Wichita County v. Hart, 917 S.W.2d 779, 785 (Tex. 1996)
(noting that those with law enforcement training have “far more exposure and
experience in determining whether an action violates the law,” and thus, the
reasonableness of their belief that a law has been violated will be examined
more closely than will the beliefs of non-law enforcement employees).

We first address the
causation element of retaliation.  Pointing to Thanedar’s failure to disclose
to the board that he was not licensed as a CPA, his refusal to pay the Stainke
Elementary School contractor, and other job performance-related complaints,
DISD argues that Thanedar “did not prove that [DISD] took the action [it] did
as a result of [Thanedar] making a report to them.”[8] 
We note that Thanedar did not bear the exclusive burden at trial to establish
the causation element.  As noted, section 554.004(a) of the Whistleblower Act
states that, if a suspension or termination is imposed within ninety days of
the report to law enforcement, a rebuttable presumption arises that the
suspension or termination was imposed because of that report.  Tex. Gov’t Code Ann. § 554.004(a).  It
is undisputed that Thanedar’s suspension and termination occurred within ninety
days of his making the reports of wrongdoing.[9] 
Accordingly, the burden was on DISD to rebut the statutory presumption that the
suspension and termination were caused by Thanedar’s reports.  See id. 
We find that DISD met that burden.

Matthew Jones, a
member of the DISD board of trustees at the time of Thanedar’s suspension and
dismissal, testified that “turmoil” developed in the district’s business office
during Thanedar’s tenure as CFO.  He explained further:

I don’t know exactly what Mr. Thanedar
was doing or not doing, but I think he was approving every single PO [purchase
order] at one point.

 

And what that was causing was a great
delay in numerous, numerous payments that were supposed to be going out.  And
we had principals that were going crazy because they had students lined up to
go on trips and they had people there but there was no—the hotel hadn’t been
paid for or the trip to Houston or whatever, there was no payment.  They
couldn’t get any POs out.

 

And we had circumstances where, for
example, the athletic department had purchased tractors to keep the fields cut
and everything, and those were being threatened to be repossessed because no
payments had been made.

 

So we had a huge disagreement about
what needed to be done to make—basically we were just way behind on a bunch of
payments and people were not getting things done that needed to be done, and
Mr. Thanedar was holding all the payments.

 

Jones was then asked specifically
why he voted to end Thanedar’s employment with DISD.  He responded:

A number of issues were all surfacing
at the same point, the payroll department and the purchase orders being one.  I
think probably the one that was the biggest concern to me and that really
pushed things over the top far and away was our bond issue.  Mr. Thanedar . . .
made statements to me and to the entire Board that we could go out for our
entire bond amount, which I recall being 42 million—and that could be wrong one
way or the other.

 

And the bonds are ones you get to
build other schools.  And . . . if you’re going to do that, then that creates
additional tax, so it was going to take seven additional cents [per $100
valuation] to everybody in Donna on their property tax in order to be able to
have a 42-million-dollar bond, that’s what we were looking at.  And as a board,
we were not willing to do that. . . .

 

Mr. Thanedar made the statement to us
that we could—there [are] two sets of taxes.  There is one that is for your
bond elections, and there is another one that we get funded off of just for our
general stuff, one basically for buildings and new buildings and one for
everything else. . . .  One of them used to be capped at 1.50 per hundred. . .
.  [W]e call that the M&O, maintenance and operations tax. . . .  Then you
have on top of that an existing . . . tax for those bonds you pass for the old
schools you built.  And if you want to get new ones and get new money that
number is going to go up. . . .

 

And Mr. Thanedar explained to the
board that we could reduce the one that was 1.50 down to 1.43 with very low
impact to the district, to the tune of something less than a million dollars,
maybe 6 or 700 something thousand dollars. . . .  So, . . . one [tax rate]
would go up and one would go down and taxpayers would still be paying $1.16
total.  Their taxes wouldn’t go up.  But we would just kind of reallocate it
out of the general fund tax and move it over into the building tax. . . .  And
Mr. Thanedar assured us we could—he could absorb this 6 or $700,000, whatever
it was, into the budget and we would go on down the road and no problem.

 

Well, so upon that information, we
went out and voted to . . . go out for a bond in March, and the election is in
May. . . .

 

At some point in time we met with Chuy
Ramirez, who was our bond counsel. . . .  We had also another party involved in
that, is a financial advisor you get.  When you’re going to sell bonds into the
market and throughout the process, you have a financial advisor, which is a
third-party, who was an expert.  Ours were, I think, out of San Antonio or
somewhere called Dain Rauscher.

 

We asked them if Mr. Thanedar was
correct, [i]s he right that we can really go down on the M&O side seven
cents without having a huge impact. . . .  They said, [“]Hey, we don’t know. 
That sounds wrong to us, but we’re not experts in that area.  We will try to
help you find out.  Mr. Thanedar assured us that he was correct.[”]

 

Then at a meeting we had with Mr.
Ramirez, . . . Ramirez explained that he completely disagreed with Mr.
Thanedar’s analysis of the seven-cent issue.  And Mr. Thanedar in what I took
to be a very offensive and rude way told him that he didn’t know anything that
he was talking about and that Mr. Thanedar was right. . . .  And so after that
meeting, we got back involved with Dain Rauscher.  They went directly to TEA. 
And TEA, the guy who writes the proposals, sent us back information saying no,
that’s not a $700,000 difference.  That’s a 7 million—6 to 7 million reduction in
your funding from the State you’re going to get.  If you go from $1[.50] to
$1.43 on your general fund dollars, you’re going to lose 7 million.

 

And I’ll tell you, at that point I
lost every bit of confidence in Mr. Thanedar because we were already deep in to
the process.  He knew—and that would have bankrupted our district in no time at
all had we taken that action or we would have just had to raise the tax and had
lied to our constituents and to our community.  And so that—that was the major
factor for me in having no further confidence in Mr. Thanedar and what he said
being accurate.

 

Trustee Juan Gilbert
Guerrero testified that, at the April 18, 2006 board meeting, Jones recommended
to the board that it terminate Thanedar’s employment, Guerrero made a motion to
approve the recommendation, the motion was seconded by another trustee, and the
board voted unanimously in favor of the motion.

Considering this
evidence, we find that reasonable and fair-minded people could have concluded
that DISD effectively rebutted the statutorily-mandated presumption.  See
id. § 554.004(a); City of Keller, 168 S.W.3d at 823.  Further, a
reasonable juror could have concluded from this evidence that the DISD board of
trustees suspended and terminated Thanedar due to his job performance, and not
because of the reports Thanedar made to law enforcement.  See Tex. Gov’t Code Ann. § 554.004(b). 
Because Thanedar failed to establish, as a matter of law, all vital facts in
support of his Whistleblower Act claim, see Dow Chem. Co., 46
S.W.3d at 241, the evidence was legally sufficient to support the jury’s
rejection of that claim.  Thanedar’s seventh issue is overruled.

III. 
Conclusion

            We affirm the
trial court’s judgment.[10]

 

                                                                                                

DORI
CONTRERAS GARZA

                                                                                                Justice

 

 

Delivered and
filed the 

18th day of August,
2011.









[1]
Thanedar does not challenge the trial court’s directed verdicts on his
constitutional due process and breach of contract claims.

 





[2]
Also by his second issue, Thanedar asserts that:  (1) the trial court “erred in
disregarding DISD’s willful and egregious violations of the certified agenda
provisions of TOMA”; and (2) he was never actually suspended or terminated
because the April 18, 2006 board meeting was not “legally convened” and the
“individual action of a board member” is irrelevant.

 

First, Thanedar did not, in his live pleading or at
trial, raise the issue of DISD’s alleged non-compliance with the certified
agenda provisions of TOMA.  See Tex.
Gov’t Code Ann. § 551.103 (West 2004) (providing that “[a] governmental
body shall either keep a certified agenda or make a tape recording of the
proceedings of each closed meeting . . .”).  Accordingly, we do not entertain
that argument.  See Tex. R. App.
P. 47.1 (requiring us to address “every issue raised and necessary to final
disposition of the appeal”).

 

Second, in claiming that he was “never actually
suspended or terminated,” Thanedar appears to argue that the district
superintendent unilaterally ordered his dismissal without authority given by
the board of trustees.  However, the record reveals that those decisions were
in fact taken by the board as a whole.  Further, a DISD policy document
entitled “DCD (Local)”, introduced at trial as Plaintiff’s Exhibit 24, reflects
that the board of trustees delegated to the superintendent the authority to
dismiss “noncertified professionals, paraprofessionals, and auxiliary
employees,” which (the parties appear to agree) includes the district’s CFO. 
Thanedar baldly asserts on appeal that “[t]he purported policy DCD (Local) . .
. is false and fabricated as it was never adopted by the Board.”  However,
Thanedar did not challenge the authenticity of the “DCD (Local)” policy
document at trial—indeed, he was the party that sought its admittance as
evidence.  See Tex. R. App. P.
33.1(a)(1).  Moreover, Thanedar does not support his claim that the document is
false or fabricated with any legal argument, record references, or citations to
authority.  See Tex. R. App. P.
38.1(i).  We do not find these arguments persuasive.

 





[3]
Thanedar also asserts by his fourth issue that the trial court erred in denying
his motion to strike DISD’s seventh amended answer, which he claims was filed
only two business days before trial.  We note that, according to the record,
DISD’s seventh amended answer was filed on July 20, 2009, some eight days
before voir dire took place on July 28, 2009.  See Tex. R. Civ. P. 63 (providing that a
party must obtain leave of court in order to file pleadings within seven days
of trial).  Nevertheless, because Thanedar does not support this argument with
citations to authority, we consider it waived.  See Tex. R. App. P. 38.1(i).





[4]
The after-acquired evidence doctrine differs from the defense set forth in
subsection 554.004(b) of the Whistleblower Act in that the former acts only as
a limitation on recoverable damages, whereas the latter serves as a complete
bar to recovery.  See Tex. Gov’t
Code Ann. § 554.004(b) (West 2004) (“It is an affirmative defense to a
suit under this chapter that the employing state or local governmental entity
would have taken the action against the employee that forms the basis of the
suit based solely on information, observation, or evidence that is not related
to the fact that the employee made a report protected under this chapter of a
violation of law.”); Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 312
(Tex. 1997).





[5]
Thanedar also argues by this issue that DISD’s trial counsel “engaged [in]
ethnic baiting of [the] jury creating incurable jury taint and engaged in
improper jury argument.”  He specifically complains of defense counsel’s
offhand comments that Thanedar “is not from the [Rio Grande V]alley” and that counsel’s
nickname is “Cantinflas.”  He also accuses the jury of misconduct, noting that
he “interviewed” the jury foreman shortly after the verdict was rendered, and
that during this interview (which is absent from the record), the foreman
stated that “there wasn’t enough time” to look into reasons for Thanedar’s
discharge.  These ancillary arguments, like the central argument of issue five,
are not supported by citations to authority and are therefore waived.  See Tex. R. App. P. 38.1(i).





[6]
In defense of the court’s charge, DISD repeatedly refers to the fact that the
questions included therein track those set forth in the State Bar of Texas
Pattern Jury Charges.  See State
Bar of Texas, Texas Pattern Jury Charges, 107.4 & 107.7 (1997 ed.). 
However, although the Pattern Jury Charges are “heavily relied upon by both the
bench and bar,” Alamo Lumber Co. v. Pena, 972 S.W.2d 800, 808 (Tex. App.—Corpus
Christi 1998, pet. denied), they “are not law.”  H.E. Butt Grocery Co. v.
Bilotto, 985 S.W.2d 22, 37 (Tex. 1998).  Without regard to the Pattern Jury
Charges, the trial court was still under an obligation to submit issues “logically,
simply, clearly, fairly, correctly, and completely.”  Hyundai Motor Co. v.
Rodriguez, 995 S.W.2d 661, 664 (Tex. 1999).

 





[7]
According to Thanedar’s testimony, he made separate reports to, among others,
the Texas Education Agency, the Federal Bureau of Investigation, DISD Police,
the Federal Communications Commission, and the United States Department of
Justice.





[8]
This is a misstatement of the applicable law.  A Whistleblower Act plaintiff
need not show that he made a report of illegal activity to the entity that ordered
the adverse employment action; rather, the plaintiff must show that a
report was made to law enforcement and that the adverse employment
action was the result of the report having been made.  Bexar County v. Lopez,
94 S.W.3d 711, 714 (Tex. App.—San Antonio 2002, no pet.) (citing Tex. Gov’t Code Ann. § 554.002(a)).

 





[9]
As noted, Thanedar disputes the notion that the DISD board of trustees properly
exercised its legal authority to suspend or dismiss him.  However, he does not
dispute that the purported suspension and dismissal occurred within ninety days
of his reports to law enforcement.





[10]
Thanedar requests in his brief that we impose sanctions on DISD’s trial
counsel, Eileen Leeds, for “engaging in ethnic baiting of jury and for
obstructing justice.”  Having reviewed the record, we find Thanedar’s issue to
be utterly lacking in merit.  We deny his request.